**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ASTELLAS PHARMA US, INC., a Delaware corporation, | |
| Plaintiff, | |
| v. | Case No. |
| UROTODAY, INC., a California corporation, | FILED: AUGUST 29, 2008 <br> 08CV4950 <br> JUDGE KOCORAS <br> MAGISTRATE JUDGE BROWN <br> AO |
| Defendant. | |

**COMPLAINT**

Plaintiff ASTELLAS PHARMA US, INC. ("APUS"), a Delaware corporation, complains of defendant UROTODAY, INC. ("UroToday"), a California corporation, as follows:

**I.     NATURE OF ACTION**

1.      This case arises out of UroToday's breach of its contractual obligations to APUS and refusal to return money to which UroToday is not entitled. UroToday applied to APUS for two educational grants in the amounts of $450,500.00 and $663,000.00. UroToday submitted written applications requesting the educational grants and describing the programs for which the grant monies were to be used. APUS accepted and approved the grant applications and provided UroToday with the requested grant monies, totaling $1,113,500.00, pursuant to certain written terms and conditions. Among other things, UroToday was required to maintain detailed records of the manner in which the grant monies were expended, APUS had the right to review and copy UroToday's records related to programs and/or materials developed under the grants, and return any unused portions of the grant monies to APUS.

2.      More than a year after APUS provided UroToday with the grant monies, APUS

learned that the programs for which the grant monies were to be exclusively used had not taken place. Since September 2007, APUS has repeatedly demanded that UroToday provide copies of detailed records of the manner in which any portions of the grant monies were allegedly expended, provide copies of UroToday's records, if any, related to the programs and/or materials described in UroToday's grant applications, and return any unused portions of the grant monies.

3.     In response, on or about June 30, 2008, nine months after APUS's first communication regarding return of the grant monies, UroToday claims that it has spent $411,518.00 to begin developing the programs described in the grant applications, but provided APUS with only an inadequate, cursory summary of the work it claims to have done. UroToday has failed to provide a meaningful accounting of the manner in which it claims to have spent portions of the grant monies, failed to provide copies of UroToday's records, if any, related to the programs and/or materials relating to the work UroToday claims to have done thus far under the grants, and failed to return the grant monies.

## II.    JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the action is between citizens of different states.

5.     Venue is based on 28 U.S.C. § 1391(a)(2). Venue is proper in the Northern District of Illinois because a substantial part of the events or omissions on which the claims set forth herein are based occurred in that District.

## III.    PARTIES

6.     Plaintiff APUS is a Delaware corporation with its principal place of business in Deerfield, Illinois.

7.     APUS is informed and believes, and on that basis alleges, that defendant

- 2 -

UroToday is a California corporation with its principal place of business in Berkeley, California, and that UroToday is in the business of, among other things, providing medical clinical content via live, online, web-based interactive, and print formats.

## IV.     FACTUAL ALLEGATIONS

8.     On or about April 13, 2006, UroToday submitted a written application to APUS for an educational grant in the amount of $450,500.00 to be used to develop and host a series of three expert urology leaders forums ("Forums Grant").

9.     On or about April 13, 2006, UroToday submitted a written application to APUS for an educational grant in the amount of $663,000.00 to be used to create and host a three-part webcast series regarding the treatment of overactive bladder ("Webcast Grant").

10.     On or about June 28, 2006, pursuant to the educational grant applications submitted by UroToday, APUS accepted and approved the two requested educational grants in the amounts of $450,500.00 for the Forums Grant and $663,000.00 for the Webcast Grant (collectively "Grants"), pursuant to certain written Terms and Conditions of the Grants ("Terms and Conditions").

11.     Two checks for these Grants, one for $450,500.00 and one for $663,000.00 respectively, were sent to UroToday with the Terms and Conditions on or about June 28, 2006. The checks were cashed and funds were disbursed.

12.     The Terms and Conditions represented the entire agreement between the parties and superceded all prior agreements and understandings.  The Terms and Conditions were effective and binding.

13.     Under the Terms and Conditions, the Grants were to be used exclusively for educational expenses directly related to the programs and/or materials described in UroToday's written educational grant applications.  None of the proceeds from the Grants were to be used for

- 3 -

ordinary business expenses, whether or not related, and any unused portions of the Grants were to be returned to APUS.

14.     Under the Terms and Conditions, UroToday was required to maintain detailed records of the manner in which the proceeds from the Grants were expended.  Upon APUS's request, APUS had the right to review and copy UroToday's records related to the programs and/or materials.  If enduring materials were created with the proceeds from the Grants, UroToday was required to forward a copy to APUS.

15.     APUS is informed and believes that, as of September 2007, more than a year after the Grants were awarded, none of the urology forums or webcast series described in UroToday's educational grant applications had taken place.

16.     On or about September 20, 2007, APUS contacted UroToday and orally requested that UroToday cease any work it may have begun on the programs and return any unused portions of the Grants to APUS.

17.     On or about October 3, 2007, APUS sent UroToday a letter via e-mail requesting again the return of any unused portions of the Grants, copies of detailed records of any grant money expenditures, and copies of any enduring materials.  UroToday did not respond.

18.     On or about November 14, 2007, APUS sent UroToday another letter via e-mail and United Parcel Service requesting yet again the return of any unused portions of the Grants, copies of detailed records of any grant money expenditures, and copies of any enduring materials.  APUS is informed and believes that UroToday eventually refused acceptance of the letter from United Parcel Service with instructions to return it to the shipper.

19.     Although APUS gave UroToday more than enough time to return any unused portions of the Grants and to provide the detailed records requested, UroToday did not respond

- 4 -

to APUS's letters.  APUS retained outside counsel, and on or about April 29, 2008, APUS attempted to deliver to UroToday personally another letter requesting yet again the return of any unused portions of the Grants, copies of detailed records of the manner in which the proceeds from the Grants were expended, and copies of any enduring materials.  Delivery was finally effected on or about May 1, 2008.

20.     On or about June 30, 2008, nine months after APUS's first communication regarding return of the grant monies, UroToday finally provided a program synopsis purporting to outline the material to be presented for both Grants and a cursory budget/expense report that was less than two pages long.

21.     According to the cursory budget/expense report for the Forums Grant, UroToday claims it has spent $85,000.00.  For example, this budget/expense report states that $30,000.00 was spent on a "Content Development Meeting," $30,000.00 was spent on slide design and production, $10,000.00 was spent on "Interactive Tool development/posting development," and $15,000.00 was spent on "Faculty Honorarium content development."  The budget/expense report lacks the needed details or support to sufficiently account for these alleged expenditures. For example, among other things, the entries in the budget/expense report lack sufficient detail or explanation, UroToday has not provided APUS with copies of the slides that it claims to have spent $30,000 of Forums Grant money to create, has not provided APUS with copies of minutes of meetings, nor has it provided back-up receipts or any other support/evidence for its expenses.

22.     According to the cursory budget/expense report for the Webcast Grant, UroToday claims it has spent $326,518.00.  For example, this budget/expense report states that $12,000.00 was spent on "slides," $9,000.00 was spent on three days of meeting space, $5,000.00 was spent on "av equipment," $6459.00 was spent on travel costs to the University of Pennsylvania,

$12,315.00 was spent on unspecified "travel," $3,350 was spent on "meals," and $5,816 on a hotel. Other items lacking needed details are listed on the budget/expense report as well, all totaling $326,518.00. The budget/expense report lacks the needed details or support to sufficiently account for these alleged expenditures. For example, among other things, the entries in the budget/expense report lack sufficient detail or explanation, UroToday has not provided APUS with copies of the slides that it claims to have spent $12,000 of Webcast Grant money to create, has not provided APUS with copies of minutes of meetings, nor has it provided back-up receipts or any other support/evidence for its expenses.

23.     In sum, according to UroToday, it has spent $411,518.00 of the total $1,113,500.00 in grant money that was provided. Despite claiming to have it spent more than one-third of the total amount of grant money, UroToday has not provided APUS with any detailed records, drafts or final enduring materials which might evidence or support its claimed expenses or any further explanation as to how portions of the Grants allegedly were used. Thus, based upon UroToday's refusals to provide detailed information, which it is obligated to provide to APUS, APUS has no supporting documentation evidencing that the work in UroToday's summary budget/expense report was performed.

24.     On or about August 6, 2008, APUS sent UroToday a letter via e-mail and confirmed by U.S. mail requesting copies of the detailed records that UroToday was required to maintain pursuant to the Terms and Conditions describing the manner in which the proceeds from the Grants were expended, any records related to the programs, and any enduring materials. APUS requested that UroToday provide the records and materials by August 15, 2008. UroToday again did not comply or provide any response whatsoever.

25.     Despite repeated requests, UroToday also has not returned any of the unused

- 6 -

portions of the Grants.

V.    **CLAIMS FOR RELIEF**

<u>FIRST CLAIM FOR RELIEF</u>

**(Breach Of Contract)**

26.    APUS hereby realleges and reincorporates by reference the allegations of paragraphs 1 through 25.

27.    Pursuant to Paragraph (a) of the Terms and Conditions of the Forums Grant, UroToday "will use [the] Grant exclusively for educational expenses directly related to the programs and/or materials described in the documentation [UroToday] submitted.  None of the proceeds from [the] Grant will be used for an ordinary business expense, whether or not related. Any unused portions of [the] Grant will be returned to APUS."

28.    Pursuant to Paragraph (c) of the Terms and Conditions of the Forums Grant, UroToday "will maintain detailed records of the manner in which the proceeds from the Grant were expended.  Upon APUS's request, APUS has the right to review and copy [UroToday's] records related to the program and/or materials.  If enduring materials are created with the proceeds from the Grant, [UroToday] will forward a copy to APUS."

29.    APUS has performed all conditions, covenants, and promises required on its part to be performed, except to the extent that such performance was excused by UroToday's total and/or material breaches of the Terms and Conditions of the Forums Grant.

30.    UroToday breached the Terms and Conditions of the Forums Grant by, among other things:

a.    Failing to host the expert urology leaders forums described in UroToday's educational grant application within a reasonable time.

- 7 -

b.    Failing and refusing to return unused portions of the Forums Grant despite repeated requests.

c.    Failing and refusing to maintain and/or provide APUS with copies of "detailed records of the manner in which the proceeds from the Grant were expended."

d.    Failing and refusing to provide APUS with copies of "records related to the program and/or materials" described in UroToday's educational grant application.

31.    As a result of UroToday's total and/or material breaches of the Terms and Conditions, APUS has suffered, and continues to suffer, damages in an amount to be determined at trial, but at least $365,500.00 representing that unused portion of the Forums Grant, according to UroToday's summary, which is subject to further proof showing that the alleged grant expenditures were indeed spent and spent appropriately.

## SECOND CLAIM FOR RELIEF

### (Breach Of Contract)

32.    APUS hereby realleges and reincorporates by reference the allegations of paragraphs 1 through 25.

33.    Pursuant to Paragraph (a) of the Terms and Conditions of the Webcast Grant, UroToday "will use [the] Grant exclusively for educational expenses directly related to the programs and/or materials described in the documentation [UroToday] submitted.  None of the proceeds from [the] Grant will be used for an ordinary business expense, whether or not related. Any unused portions of [the] Grant will be returned to APUS."

34.    Pursuant to Paragraph (c) of the Terms and Conditions of the Webcast Grant, UroToday "will maintain detailed records of the manner in which the proceeds from the Grant were expended.  Upon APUS's request, APUS has the right to review and copy [UroToday's]

- 8 -

records related to the program and/or materials.  If enduring materials are created with the proceeds from the Grant, [UroToday] will forward a copy to APUS."

35.     APUS has performed all conditions, covenants, and promises required on its part to be performed, except to the extent that such performance was excused by UroToday's total and/or material breaches of the Terms and Conditions of the Webcast Grant.

36.     UroToday breached the Terms and Conditions of the Webcast Grant by, among other things:

a.     Failing to host the webcast series described in UroToday's educational grant application within a reasonable time.

b.     Failing and refusing to return unused portions of the Webcast Grant despite repeated requests.

c.     Failing and refusing to maintain and/or provide APUS with copies of "detailed records of the manner in which the proceeds from the Grant were expended."

d.     Failing and refusing to provide APUS with copies of "records related to the program and/or materials" described in UroToday's educational grant application.

37.     As a result of UroToday's total and/or material breaches of the Terms and Conditions, APUS has suffered, and continues to suffer, damages in an amount to be determined at trial, but at least $336,482.00 representing that unused portion of the Webcast Grant, according to UroToday's summary, which is subject to further proof showing that the alleged grant expenditures were indeed spent and spent appropriately.

## THIRD CLAIM FOR RELIEF

### (Relief Based On Rescission)

38.     APUS hereby realleges and reincorporates by reference the allegations of

- 9 -

paragraphs 1 through 25.

39.     Pursuant to Paragraph (a) of the Terms and Conditions of the Forums Grant, UroToday "will use [the] Grant exclusively for educational expenses directly related to the programs and/or materials described in the documentation [UroToday] submitted.  None of the proceeds from [the] Grant will be used for an ordinary business expense, whether or not related. Any unused portions of [the] Grant will be returned to APUS."

40.     Pursuant to Paragraph (c) of the Terms and Conditions of the Forums Grant, UroToday "will maintain detailed records of the manner in which the proceeds from the Grant were expended.  Upon APUS's request, APUS has the right to review and copy [UroToday's] records related to the program and/or materials.  If enduring materials are created with the proceeds from the Grant, [UroToday] will forward a copy to APUS."

41.     APUS has performed all conditions, covenants, and promises required on its part to be performed, except to the extent that such performance was excused by UroToday's total and/or material breaches of the Terms and Conditions of the Forums Grant.

42.     UroToday breached the Terms and Conditions of the Forums Grant by, among other things:

        a.      Failing to host the expert urology leaders forums described in UroToday's educational grant application within a reasonable time.

        b.      Failing and refusing to return unused portions of the Forums Grant despite repeated requests.

        c.      Failing and refusing to maintain and/or provide APUS with copies of "detailed records of the manner in which the proceeds from the Grant were expended."

        d.      Failing and refusing to provide APUS with copies of "records related to

- 10 -

the program and/or materials" described in UroToday's educational grant application.

43.     APUS will suffer substantial harm and injury if the Terms and Conditions of the Forums Grant are not rescinded in that, as a result of UroToday's total and/or substantial failure of consideration, APUS will be deprived of its consideration and the benefit of its bargain.

44.     APUS intends service of the summons and complaint in this action to serve as notice of rescission of the Terms and Conditions of the Forums Grant, and hereby demands that UroToday restore APUS the consideration furnished by APUS, specifically the sum of $450,500.00.

## FOURTH CLAIM FOR RELIEF

### (Relief Based On Rescission)

45.     APUS hereby realleges and reincorporates by reference the allegations of paragraphs 1 through 25.

46.     Pursuant to Paragraph (a) of the Terms and Conditions of the Webcast Grant, UroToday "will use [the] Grant exclusively for educational expenses directly related to the programs and/or materials described in the documentation [UroToday] submitted.  None of the proceeds from [the] Grant will be used for an ordinary business expense, whether or not related. Any unused portions of [the] Grant will be returned to APUS."

47.     Pursuant to Paragraph (c) of the Terms and Conditions of the Webcast Grant, UroToday "will maintain detailed records of the manner in which the proceeds from the Grant were expended.  Upon APUS's request, APUS has the right to review and copy [UroToday's] records related to the program and/or materials.  If enduring materials are created with the proceeds from the Grant, [UroToday] will forward a copy to APUS."

48.     APUS has performed all conditions, covenants, and promises required on its part

to be performed, except to the extent that such performance was excused by UroToday's total and/or material breaches of the Terms and Conditions of the Webcast Grant.

49.    UroToday breached the Terms and Conditions of the Webcast Grant by, among other things:

a.    Failing to host the webcast series described in UroToday's educational grant application within a reasonable time.

b.    Failing and refusing to return unused portions of the Webcast Grant despite repeated requests.

c.    Failing and refusing to maintain and/or provide APUS with copies of "detailed records of the manner in which the proceeds from the Grant were expended."

d.    Failing and refusing to provide APUS with copies of "records related to the program and/or materials" described in UroToday's educational grant application.

50.    APUS will suffer substantial harm and injury if the Terms and Conditions of the Webcast Grant are not rescinded in that, as a result of UroToday's total and/or substantial failure of consideration, APUS will be deprived of its consideration and the benefit of its bargain.

51.    APUS intends service of the summons and complaint in this action to serve as notice of rescission of the Terms and Conditions of the Webcast Grant, and hereby demands that UroToday restore APUS the consideration furnished by APUS, specifically the sum of $663,000.00.

## FIFTH CLAIM FOR RELIEF

### (Conversion)

52.    APUS hereby realleges and reincorporates by reference the allegations of paragraphs 1 through 25.

- 12 -

53.     On or about June 28, 2006, APUS provided UroToday with the Forums Grant in the amount of $450,500.00.  Pursuant to Paragraph (a) of the Terms and Conditions, "[a]ny unused portions of [the] Grant will be returned to APUS."

54.     According to UroToday, by September 2007, it had used $85,000.00 of the Forums Grant.

55.     On or about September 20, 2007, APUS orally demanded return of any unused portions of the Grants.  UroToday failed and refused, and continues to fail and refuse, to return the unused portions of the Grants, which APUS is informed and believes, and thereon alleges, is the sum of $365,500.00, according to the summary provided by UroToday, which is subject to further proof showing that the alleged grant expenditures were indeed spent and spent appropriately.

56.     Since September 20, 2007, APUS has repeatedly demanded return of the unused portions of the Grants.

57.     Between the time of UroToday's conversion of the above-mentioned sum to its own use and the filing of this action, APUS has properly expended time and money in pursuit of the unused portion of the Forums Grant, all to APUS's further damage in an amount presently unknown.  APUS will seek leave to insert said amount when said amount becomes known, or upon proof thereof.

## SIXTH CLAIM FOR RELIEF

### (Conversion)

58.     APUS hereby realleges and reincorporates by reference the allegations of paragraphs 1 through 25.

59.     On or about June 28, 2006, APUS provided UroToday with the Webcast Grant in

- 13 -

the amount of $663,000.00. Pursuant to Paragraph (a) of the Terms and Conditions, "[a]ny unused portions of [the] Grant will be returned to APUS."

60.    According to UroToday, by September 2007, it had used $326,518.00 of the Webcast Grant.

61.    On or about September 20, 2007, APUS orally demanded return of any unused portions of the Grants. UroToday failed and refused, and continues to fail and refuse, to return the unused portions of the Grants, which APUS is informed and believes, and thereon alleges, is the sum of $336,482.00, according to the summary provided by UroToday, which is subject to further proof showing that the alleged grant expenditures were indeed spent and spent appropriately.

62.    Since September 20, 2007, APUS has repeatedly demanded return of the unused portions of the Grants.

63.    Between the time of UroToday's conversion of the above-mentioned sum to its own use and the filing of this action, APUS has properly expended time and money in pursuit of the unused portion of the Webcast Grant, all to APUS's further damage in an amount presently unknown. APUS will seek leave to insert said amount when said amount becomes known, or upon proof thereof.

## SEVENTH CLAIM FOR RELIEF

### (Money Had And Received)

64.    APUS hereby realleges and reincorporates by reference the allegations of paragraphs 1 through 25.

65.    Within the last five years, UroToday became indebted to APUS in the sum of $450,500.00 for money had and received by UroToday from APUS, pursuant to the Forums

- 14 -

Grant.

66.    UroToday failed to host the expert urology leaders forums described in its educational grant application within a reasonable time.  In equity and good conscience, the sum of the Forums Grant should be returned to APUS.

67.    APUS has repeatedly demanded payment from UroToday.  The last demand was made on May 1, 2008.

68.    Neither the whole nor any part of this sum has been paid, and there is now owing to APUS the sum of $450,500.00 with interest as allowed by law from and after June 28, 2006.

### EIGHTH CLAIM FOR RELIEF

**(Money Had And Received)**

69.    APUS hereby realleges and reincorporates by reference the allegations of paragraphs 1 through 25.

70.    Within the last five years, UroToday became indebted to APUS in the sum of $663,000.00 for money had and received by UroToday from APUS, pursuant to the Webcast Grant.

71.    UroToday failed to host the webcast series described in its educational grant application within a reasonable time.  In equity and good conscience, the sum of the Webcast Grant should be returned to APUS.

72.    APUS has repeatedly demanded payment from UroToday.  The last demand was made on May 1, 2008.

73.    Neither the whole nor any part of this sum has been paid, and there is now owing to APUS the sum of $663,000.00 with interest as allowed by law from and after June 28, 2006.

- 15 -

## NINTH CLAIM FOR RELIEF

### (Money Had And Received)

74.     APUS hereby realleges and reincorporates by reference the allegations of paragraphs 1 through 25.

75.     Pursuant to Paragraph (a) of the Terms and Conditions of the Forums Grant, "[a]ny unused portions of [the] Grant will be returned to APUS."

76.     On or about September 20, 2007, UroToday became indebted to APUS in the sum of at least $365,500.00, representing that unused portion of the Forums Grant, for money had and received by UroToday from APUS, which is subject to further proof showing that the alleged grant expenditures were indeed spent and spent appropriately.

77.     APUS has repeatedly demanded payment from UroToday.  The last demand was made on May 1, 2008.

78.     Neither the whole nor any part of this sum has been paid, and there is now owing to APUS the sum of at least $365,500.00 with interest as allowed by law from and after September 20, 2007.

## TENTH CLAIM FOR RELIEF

### (Money Had And Received)

79.     APUS hereby realleges and reincorporates by reference the allegations of paragraphs 1 through 25.

80.     Pursuant to Paragraph (a) of the Terms and Conditions of the Webcast Grant, "[a]ny unused portions of [the] Grant will be returned to APUS."

81.     On or about September 20, 2007, UroToday became indebted to APUS in the sum of at least $336,482.00, representing that unused portion of the Webcast Grant, for money had

- 16 -

and received by UroToday from APUS, which is subject to further proof showing that the alleged grant expenditures were indeed spent and spent appropriately.

82.    APUS has repeatedly demanded payment from UroToday.  The last demand was made on May 1, 2008.

83.    Neither the whole nor any part of this sum has been paid, and there is now owing to APUS the sum of at least $336,482.00 with interest as allowed by law from and after September 20, 2007.

WHEREFORE, APUS PRAYS JUDGMENT AS FOLLOWS:

1.    On it First Claim for Relief, for damages, according to proof.

2.    On its Second Claim for Relief, for damages, according to proof.

3.    On its Third Claim for Relief:

(a)    That this Court declare that the Terms and Conditions of the Forums Grant have been rescinded; and

(b)    That UroToday be ordered to pay APUS the consideration paid by APUS in the sum of $450,500.00.

4.    On its Fourth Claim for Relief:

(a)    That this Court declare that the Terms and Conditions of the Webcast Grant have been rescinded; and

(b)    That UroToday be ordered to pay APUS the consideration paid by APUS in the sum of $663,000.00.

5.    On its Fifth Claim for Relief, for damages, according to proof.

6.    On its Sixth Claim for Relief, for damages, according to proof.

7.    On its Seventh Claim for Relief, for the sum of $450,500.00, with interest as

- 17 -

allowed by law from and after June 28, 2006.

8.    On its Eight Claim for Relief, for the sum of $663,000.00, with interest as allowed by law from and after June 28, 2006.

9.    On its Ninth Claim for Relief, for the sum of $365,500.00 (or more, subject to proof) with interest as allowed by law from and after September 20, 2007.

10.    On its Tenth Claim for Relief, for the sum of $336,482.00 (or more, subject to proof) with interest as allowed by law from and after September 20, 2007

11.    On all claims for relief:

    (a)    For costs of suit herein incurred; and

    (b)    For such other and further relief as is proper.

12.    APUS demands a jury trial.


Respectfully submitted,

ASTELLAS PHARMA US, INC.


By:    /s/ Todd E. Domjan
       Todd E. Domjan

- 18 -

Todd E. Domjan
Morgan, Lewis & Bockius LLP
77 West Wacker Drive
Chicago, IL 60601-5094
312.324.1000

David L. Schrader
Christina L. Sein
Morgan, Lewis & Bockius LLP
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
213.612.2500

Dated: August 29, 2008